UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK BERETE LISTER,

                    Petitioner,              Case No. 2:17-cv-10367
                                             Hon. Denise Page Hood
v.

TONY TRIERWEILER,
                    Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, (3) AND DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Derrick Berete Lister was convicted after a jury trial in the Saginaw Circuit Court of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2); conspiracy to commit first-degree home invasion, MICH. COMP. LAWS § 750.110a(2); assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84; conspiracy to commit assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84; carrying a firearm with unlawful intent, MICH. COMP. LAWS § 750.226; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and three counts of possession of a firearm during the commission of a felony (felony-firearm), MICH. COMP. LAWS § 750.227b.

Petitioner was sentenced to two terms of 26 years and 8 months to 50 years' imprisonment for the home invasion and conspiracy to commit home invasion convictions. These two sentences run concurrently with each other but consecutively to his other sentences. He was further sentenced to two concurrent terms of 12 years and 8 months to 20 years for the assault and conspiracy to commit assault convictions, a concurrent term of 6 to 10 years for the felon in possession conviction, a concurrent term of 4 to 8 years for the carrying a firearm with unlawful intent conviction, and three terms of 2 years for his felony-firearm convictions to be served concurrently with each other but consecutively to his other terms. Adding the consecutive terms together, Petitioner was sentenced to a composite term of 41 years and 8 months to 72 years imprisonment.

The petition raises ten claims: (1) the prosecutor impermissibly exercised a peremptory challenge to strike the only African-American male member from his jury; (2) insufficient evidence was presented to sustain Petitioner's assault and conspiracy to assault convictions; (3) the trial court erred in imposing consecutive sentences; (4) Petitioner's trial counsel was ineffective for failing to fully investigate an alibi defense; (5) Petitioner's trial counsel was ineffective for additional reasons; (6) the prosecutor committed

misconduct at trial, (7) the prosecutor improperly withheld an amended witness list from the defense; (8) appellate counsel was ineffective for failing to raise meritorious issues on direct appeal; (9) the prosecutor withheld exculpatory evidence from the defense; and (10) appellate counsel failed to raise issues of ineffective assistance of trial counsel on direct appeal.

The Court finds that Petitioner's claims are without merit or barred by his state court procedural defaults. Therefore, the petition will be denied. The Court will also deny a certificate of appealability and deny permission to appeal in forma pauperis.

## I. Background

The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The charges against defendant resulted from an incident in which defendant and another man entered a home, which was occupied by several women and children, and fired gunshots. Before trial, the trial court granted defendant's motion for the appointment of an investigator because of difficulties in contacting several individuals, in accessing police records, and in gathering information regarding alibi evidence.
>
> At trial, Catherine Williams, Ashley Williams, and Chanquiece Moton testified that on the evening of November 24, 2011, they were at Ashley Williams's home when defendant knocked on the door. Ashley Williams answered the door, and

defendant entered the home, pointed a gun at Ashley Williams, and stated that he was going to kill her.[2] Ashley Williams ran into the kitchen; defendant pursued her and fired shots in her direction. The witnesses stated that a second man, Willie Youngblood, also entered the home and began shooting. Moton stated that defendant also threatened to kill her and Ashley Williams's children. Catherine Williams and Ashley Williams showed the police a photograph of defendant they found on Facebook.

Mary Jones, defendant's girlfriend of three years, testified that she and defendant lived in Columbus, Ohio, and were visiting Saginaw, Michigan at the time the incident occurred. Jones testified that she and defendant argued about defendant's sexual encounter with Ashley Williams. Jones testified that on the day of the incident, she dropped defendant off at Youngblood's home at 11:00 a.m. and she went to her aunt's home. She and defendant left for Ohio that evening, and a few hours later, at 1:29 a.m., their car was stopped by police in Ohio for missing taillights.

The jury convicted defendant of felon in possession of a firearm, conspiracy to commit first-degree home invasion, first-degree home invasion, conspiracy to commit assault with intent to do great bodily harm less than murder, assault with intent to do great bodily harm less than murder, carrying a firearm with unlawful intent, and three counts of felony-firearm.

‗‗‗‗‗

[1]Ashley Williams stated that she knew defendant because they had a sexual encounter shortly before the incident occurred.

*People v. Lister*, 2014 WL 4495234, at *1-2 (Mich. Ct. App. Sept. 11, 2014).

Following his conviction and sentence, Petitioner filed an appeal of right.

His appellate counsel filed a brief on appeal, raising what now form his first

three habeas claims:

I. The prosecutor's exercise of a peremptory strike to exclude the only African-American male member of the jury violated Defendant's constitutional right to equal protection of the law.

II. Defendant's assault with intent to cause great bodily harm and conspiracy to commit an assault with intent to commit great bodily harm convictions are not supported by sufficient evidence. US Const Am XIV.

III. The trial court erred when it imposed consecutive terms on Counts V and VI because it disagreed with the jury's acquittal of Defendant on the original counts VII and VIII. This is constitutional error under the 6th Amendment. Defendant is entitled to a re-sentencing.

Petitioner also filed a supplemental pro se brief raising an additional two claims:

I. Defendant was denied his Sixth Amendment right to effective assistance of counsel, where counsel failed to fully investigate alibi defense evidence, within motioning the court for production of 'critical' and appointed investigator, in whom was appointed by the court to conduct an investigation into said alibi.

II. Appointed appellate counsel was ineffective contrary to both the federal and state constitutions, where appellate counsel failed to raise on appeal as a matter of right, the 'cumulative errors' of trial counsel.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion, but the court ordered that the judgment of sentence was to be amended to indicate that Petitioner's felony-firearm sentences were to run concurrently with his conspiracy convictions. *Id.*

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court. The application raised the same five claims raised in the Michigan Court of Appeals, and it also presented two additional claims:

I. The prosecution failed to provide sufficient evidence for the jury to find Defendant-Appellant guilty of assault with intent to commit great bodily harm and conspiracy to commit assault with intent to commit great bodily harm beyond a reasonable doubt, where there was irrefutable evidence that would substantiate a reliable alibi.

II. Defendant-Appellant was deprived of his federal and state constitutional rights to the effective assistance of counsel, where appointed appellate counsel refused to brief and/or provide assistance within perfecting Defendant-Appellant's in propria persona issues on appeal.

The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Lister*, 859 N.W.2d 522 (Mich. 2015)(Table).

Petitioner then filed a motion for relief in the trial court, raising six claims:

I. Was the Defendant deprived of his federal and state constitutional rights to effective assistance of counsel, where counsel's performance fell below an objective standard of reasonableness, based on the following cumulative errors of counsel during trial.

II. Was the Defendant denied a fair trial contrary to his 14th Amendment rights, where the prosecution engaged in improper comments and offered contradictory evidence to support and change the theory with regards to the weapon used before the jury?

III. Did the prosecution deprive Defendant of his right to right to cross examine, where then the prosecutor failed to comply with MCL § 767.40a, within withholding the amended res gestae witness list?

IV. Was the Defendant deprived of his Sixth and Fourteenth Amendment rights, when the prosecution withheld "exculpatory information" from the Defendant during his trial?

V. Was the Defendant deprived of his federal and state constitutional rights, where the appointed appellate counsel failed to raise the issues incorporated herein?

VI. Did trial court err in allowing conviction of Defendant of three separate counts of violating the felony-firearm statute, MCL 750.227b, in a single criminal transaction?

The trial court denied the motion for relief from judgment in an opinion dated July 25, 2015. Dkt. 18-13. After discussing the merits of the claims, the trial court found that "Defendant has not demonstrated that any of the alleged errors outlined in his motion resulted in actual prejudice as required by Mich. Ct. R. 6.508(D)(3)(b)." Id., at 3, 7.

Petitioner filed an amended motion for relief from judgment a few days before the trial court ruled on his first motion, raising one additional basis in support of his ineffective assistance of trial counsel claim. See Dkt. 18-12. The trial court denied the amended motion on the basis that it was a prohibited successive motion for relief from judgment under Michigan Court Rule 6.502(G)(2), and it was otherwise without merit. See Dkt. 18-14.

Petitioner appealed the denial of his motion for relief from judgment in the Michigan Court of Appeals. His application for leave to appeal was denied because Petitioner failed "to meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D)." *People v. Lister*, No. 328917 (Mich. Ct. App. Nov. 4, 2015). Petitioner's subsequent appeal to the Michigan Supreme Court was denied by citation to the same court rule. *People v. Lister*, No. 152845 (Mich. Sept. 6, 2016).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103 (internal quotation omitted).

## III. Analysis

A. *Batson* Challenge

Petitioner's first claim asserts that his rights under *Batson v. Kentucky*, 476 U.S. 79 (1986), were violated when the prosecutor used a peremptory challenge to strike the only male African-American juror from the jury. Petitioner asserts that the struck juror had satisfactorily answered the voir dire questions, and the prosecutor had no non-discriminatory reason to strike him over other jurors that answered the questions in the same way.

After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected this claim on the merits as follows:

> During voir dire, the prosecution exercised one of its peremptory challenges on the sole black male from the jury pool. Because the prosecutor offered a race-neutral explanation and the trial court ruled on whether the explanation was a pretext, the first step is moot, and our analysis begins with the second step. *Knight*, 473 Mich. at 338. When defendant objected to the use of the peremptory challenge on this potential juror, the prosecutor stated that he used the challenge because of the gentleman's statement that he would require scientific evidence in order to convict. This is a race-neutral reason and satisfies step two of the *Batson* process.
>
> For the final step of the *Batson* process, the trial court concluded that the prosecutor's reason for dismissing the gentleman was not pretextual. After our review of the record, we conclude that the trial court did not clearly err in making this determination.

The prosecutor's decision to excuse the sole black male from the jury pool was based on the following exchange:

[Prosecutor]: How many of you expect to see some kind of scientific evidence in this case that's going to be the—the clincher? Do you, Mr. Vaughn?

JUROR NO. 13: No.

[Prosecutor]: How about you, Ms. Morris.

JUROR NO. 7: No.

[Prosecutor]: Ms. Stinson?

JUROR NO. 4: No.

[Prosecutor]: How many of you expect to see some kind of scientific evidence in this case? DNA, fingerprints, something like that? Does anybody? Mr. Vaughn, you're shaking your head, raising your hand. Are you going to be disappointed if you don't?

JUROR NO. 13: No, not really.

[Prosecutor]: *Are you going to hold it against me and the People of the State of Michigan if you don't see or hear that kind of evidence?*

JUROR NO. 13: *Yes.*

[Prosecutor]: *So you do expect to hear or see that?*

JUROR NO. 13: *Yes.*

[Prosecutor]: And so if you don't see or hear it, you're going to be disappointed?

JUROR NO. 13: Not disappointed so much as it's got to prove him guilty.

[Prosecutor]: I'm sorry, sir, I'm having trouble hearing you.

JUROR NO. 13: I said, like, if I don't see the evidence, like to prove him guilty, I'm going to find him not guilty.

[Prosecutor]: Well, you do realize that there are kinds of evidence other than scientific evidence; don't you?

JUROR NO. 13: Yes.

[Prosecutor]: I mean, like eyewitness evidence?

JUROR NO. 13: Yes.

[Prosecutor]: Is eyewitness evidence any good to you?

JUROR NO. 13: It depends.

[Prosecutor]: Huh?

JUROR NO. 13: You can't believe what everybody says.

[Prosecutor]: Okay. I understand that. But that, of course, is your job to decide who you believe and who you don't, right? [Emphasis added.]

The prosecutor's exchange with the prospective juror during voir dire shows that the prospective juror's answers to the prosecutor's questions were somewhat ambiguous. He stated that he would judge the case based on the evidence presented, but also stated that he would hold it against the prosecution if it did

not produce scientific evidence. Thus, when viewing the record as a whole, we are not left with a definite and firm conviction that the trial court made a mistake for this final step of the *Batson* process.

      As a result, defendant has failed to establish any discriminatory intent on behalf of the prosecutor, and his *Batson* challenge fails.

*Lister*, 2014 WL 4495234, at *3-5 (emphasis in original).

In *Batson* the Supreme Court articulated a three-step analysis to be applied to a claim that purposeful discrimination occurred in the selection of the jury based on the prosecutor's exercise of peremptory challenges. 476 U.S. at 96; see *United States v. Bartholomew*, 310 F.3d 912, 919 (6th Cir. 2002). First, the defendant must establish a prima facie case of racial discrimination. See *United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003). This requires an initial showing that "the defendant . . . is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 476 U.S. at 96 (citation omitted).

Second, once the defendant has raised the necessary inference, "the burden shifts to the state to come forward with a neutral explanation for challenging [potential] jurors." *Id.* at 97. "The government is not required to persuade the court that its reasons for dismissing the juror were well-founded;

rather it need only demonstrate that its reasons were race-neutral." *Copeland*, 321 F.3d at 599. More specifically, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible. 'At this . . . step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)).

Third, the party opposing the strike must demonstrate that the prosecutor's purported explanation is merely a pretext for racial motivation. See *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001). Ultimately, the court must determine "whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359. In making this determination, the Court presumes that the facially valid reasons proffered by the prosecution are true. *Id.* at 359-60. Racially discriminatory purpose or intent must be affirmatively shown by the opponent of the strike. *Id.* at 360. The ultimate burden of persuasion always remains with the opponent of the strike. See *United States v. McFerron*, 163 F.3d 952, 955 (6th Cir.1998).

Notwithstanding this three-part test, the Supreme Court held that the

question of whether a prima facie case has been established becomes moot once a court rules on the ultimate question under *Batson* of whether there was purposeful discrimination. *Hernandez*, 500 U.S. at 360; *Lancaster v. Adams*, 324 F.3d 423, 432-33 (6th Cir. 2003). "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court had ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359; *Lancaster*, 324 F.3d at 433.

Here, in response to Petitioner's *Batson* challenge the prosecutor indicated that it struck the juror in question because he "didn't like his initial answers regarding my questions on voir dire about the necessity of scientific evidence. He indicated he would require it." Dkt. 18-6, at 78. The trial court accepted this race-neutral explanation as true, stating "[b]ased upon what [the prosecutor] has placed on the record . . . I'm going to deny your request at this time. I believe he's given justification for his excusing of Mr. Vaughn. . . ." Id., at 78-79.

Petitioner argues that another prospective juror answered the question about scientific evidence in the same way, but the record does not support this assertion. Unlike the struck juror, who at first stated he would "hold it

against [the prosecution] if [he] didn't see or hear [scientific evidence]," Id., at 39, the other juror merely stated "it would help if [scientific evidence] was seen a little bit, like fingerprints or something like that." Id., at 40-41. No other juror answered the initial question of whether they would hold it against the prosecutor if he did not present scientific evidence affirmatively. Ultimately both of the jurors in question agreed that they would "judge the case based on what there is," but the struck juror's initial response was distinctly more critical about the lack of scientific evidence from the other answers given.

The record therefore reasonably supports the state court's finding that the prosecutor's explanation was both facially race-neutral and not merely a pretext. See *Purkett v. Elem*, 514 U.S. at 768-69. The reason given by the prosecutor was based on the responses given by jurors to the questions presented during voir dire. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360. Petitioner has not satisfied his burden to overcome the trial court's finding that the prosecutor's explanation was not racially motivated. See *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015). The claim is therefore without merit.

B. Sufficiency of the Evidence

Petitioner's second claim asserts that constitutionally insufficient evidence was presented at trial to sustain his convictions for the assault and conspiracy to commit the assault offenses. He asserts that the evidence at trial indicated that the second person who entered the apartment was the only shooter, and the evidence indicated that Petitioner was the first person to enter the apartment.

After reciting the controlling constitutional standard for determining whether constitutionally sufficient evidence was presented at trial to sustain Petitioner's convictions, the Michigan Court of Appeals rejected the claim as follows:

> Catherine Williams, Ashley Williams, and Chanquiece Moton testified that defendant entered the home armed with a handgun, threatened to kill Ashley Williams, and pursued Ashley Williams through the home while firing shots in her direction. The infliction of an actual wound is not an element of the offense of assault with intent to do great bodily harm less than murder. *Parcha*, 227 Mich. App. at 239. Furthermore, looking at the evidence as a whole, a jury reasonably could infer that defendant intended to cause great bodily harm to Ashley. *Kanaan*, 278 Mich. App. at 622; see also *People v. Fletcher*, 260 Mich. App. 531, 562; 679 N.W.2d 127 (2004). In addition, circumstantial evidence supported a finding that defendant conspired with Youngblood to commit the offense of assault with intent to do great bodily harm less than murder. *Jackson*, 292 Mich. App. at 588. Contrary to defendant's assertion that all the shots were fired by Youngblood, evidence in the form of witness testimony supported a finding that

defendant was a shooter and in fact was the primary and initial shooter. Accordingly, the evidence was sufficient to support defendant's convictions of assault with intent to do great bodily harm less than murder and conspiracy to commit assault with intent to do great bodily harm less than murder.

*Lister*, 2014 WL 4495234, at *5.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A reviewing court is not required to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318-19 (internal citations omitted) (emphasis in original). Furthermore, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court

disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. See *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court determination that sufficient evidence was presented, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." *Id.*

The decision of the Michigan Court of Appeals that sufficient evidence was presented at trial to sustain Petitioner's assault and conspiracy to commit assault convictions did not involve an unreasonable application of the clearly established Supreme Court standard. Ashley Williams, who previously had a romantic relationship with Petitioner and therefore had no problem identifying him as one of the perpetrators, testified that Petitioner pointed a handgun at her during the incident and fired multiple shots. Dkt. 18-7, at 133-34.

Catherine Williams also identified Petitioner as one of the shooters. Id. at 70, 78, 82. Finally, Chanquiece Moton likewise testified that Petitioner fired his gun along with the other perpetrator. Id. at 193-94. The jury was free to accept the testimony of these three eyewitnesses as true. It did not fall below the threshold of "bare rationality" for the Michigan Court of Appeals to reject Petitioner's sufficiency of the evidence claim. *Coleman*, 566 U.S. at 656.

## C. Consecutive Sentences

Petitioner's third claim asserts that the trial court vindictively imposed consecutive sentences because it was disappointed that the jury did not find him guilty of the more serious charge of assault with intent to commit murder.

The Michigan Court of Appeals found that consecutive sentences were authorized by Michigan law under MICH. COMP. LAWS § 750.110a(8). That statute provides that "[t]he court may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." *Lister*, 2014 WL 4495234, at *6.

Whether a criminal defendant was properly sentenced to consecutive terms of imprisonment under state law is not cognizable for purposes of habeas corpus review. See *Harrison v. Parke*, 1990 WL 170428, at *2 (6th

Cir. Nov. 6, 1990) ("Because it is a matter of substantive state law whether [a petitioner's] sentence should run concurrently or consecutively, we find the district court did not err in ruling that [a petitioner's] challenge to his consecutive sentences was not cognizable in a federal habeas corpus proceeding."); *Jones v. Smith*, 1995 WL 45631 at *1 (6th Cir. Feb. 3, 1995) (a habeas petitioner's "contention that his consecutive life sentences are unauthorized under state law does not warrant habeas relief.") (citing *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982)). Petitioner's third claim therefore does not state a basis for granting habeas relief.

D. Ineffective Assistance of Trial Counsel

Petitioner's fourth claim asserts that his trial counsel failed to adequately conduct a pretrial investigation regarding his defense that he was in Ohio at the time of the crime. He asserts that his attorney should have better used the court appointed private investigator to track-down witnesses in Ohio who saw Petitioner or to recover potential videotape evidence showing that he was in Ohio at the time of the offense. It should be noted that this claim also forms the basis for part of Petitioner's fifth claim.

After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected the claim as follows:

Trial counsel did not render ineffective assistance. Trial counsel obtained the assistance of a court-appointed investigator to travel to Ohio and investigate and procure the evidence asserted by defendant. Trial counsel acted reasonably in procuring the services of an investigator and using the evidence gathered for defendant's defense. Defendant does not indicate what further evidence an investigator could or should have gathered to benefit his case. Accordingly, defendant has failed to establish that counsel's performance fell below an objectively level of reasonableness.

*Lister*, 2014 WL 4495234, at *7.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland*, 466 U.S. at 687-88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. On habeas review, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable

argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 562 U.S. at 105.

The Michigan Court of Appeals did not unreasonably apply the *Strickland* standard when it denied relief with respect to this claim. Contrary to Petitioner's allegations, his defense counsel adequately presented his alibi defense. The offense occurred sometime before 9:00 p.m. on Thanksgiving Day. Petitioner's defense was that although he was in Saginaw on Thanksgiving Day, he drove back to Ohio before the offense occurred.

In support of this defense Petitioner's girlfriend, Mary Sanders, testified that she departed with Petitioner for Ohio from Saginaw at 8:00 p.m. Dkt. 18-8, 62, 66. Jones testified that she was with Petitioner from 11:00 a.m. on Thanksgiving Day until her arrest in Ohio. Id. at 63. She testified that Petitioner was sick from over-drinking, and she stopped the car three times for 20 to 30 minute breaks to allow Petitioner to vomit. Id. at 80. She testified that they were pulled-over by police near Upper Sandusky, Ohio, at about 1:30 a.m. Id. at 68. Jones was arrested for driving without a license. Id. at 69-70.

Ohio Officer Brandon Kromer testified for the defense that he stopped Jones in Ohio as indicated, that Petitioner was in the car, and that Petitioner

smelled of alcohol. Id. at 101-103. Kromer testified that the stop occurred at 1:29 a.m. Id. at 106. Kromer testified that Upper Sandusky was about 210 miles from Saginaw, and that it took him about three hours to drive the distance. Id. at 110-112. Accordingly, while Petitioner was seen by a police officer over 200 miles from the scene of the crime, that occurred over four hours later, leaving ample time for Jones to have driven the distance. Contrary to Petitioner's allegations, the evidence did not indicate that he was in two places at the same time.

Petitioner's claim that a more thorough investigation into the alibi defense might have resulted in further evidence showing that he was on the road at the time of the offense is wholly speculative. He suggests that video footage from the apartment complex where the crime took place or from a gas station in Bowling Green, Ohio, would support his alibi defense. But Petitioner made no proffer to the state courts or to this court that any such evidence would have been discovered by a more thorough investigation.[1]

Again, while Petitioner was pulled-over about 200 miles from the scene

---

[1] Petitioner proffers a letter from a gas station in Ohio indicating that security video footage is retained for two weeks to one month. Dkt. 19, Exhibit E. The crime occurred on November 24, 2011, and the charges against Petitioner were filed on December 15, 2011. Dkt. 18-1. The private investigator was appointed on October 29, 2012, well after any tapes would have been erased. Id. at 3.

of the crime, that was over four hours after the crime occurred. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013)(quoting *Strickland*, 466 U.S. at 689). The letter from the gas station does not come close to demonstrating that exculpatory evidence existed or would have been discovered but for the alleged ineffectiveness of Petitioner's trial counsel. The claim was reasonably rejected by the Michigan Court of Appeals.

E. Procedural Default

Petitioner's remaining claims were presented to the state courts in his motion for relief from judgment and the appeal that followed it. The trial court denied the motion for relief from judgment in part because "Defendant has not demonstrated that any of the alleged errors outlined in his motion resulted in actual prejudice as required by Mich. Ct. R. 6.508(D)(3)(b)." Dkt. 18-13, at 3, 7." The Michigan Court of Appeals and Michigan Supreme Court subsequently denied Petitioner's appeals because he did not meet the "burden of establishing entitlement to relief under MCR 6.508(D)." Dkt. 18-18, at 1; Dkt. 18-20, at 1.

In denying Petitioner's post-conviction appeals, the state appellate courts issued form orders citing to Michigan Court Rule 6.508(D). These orders are ambiguous as to whether they refer to the procedural default provisions of Rule 6.508(D) or constitute a denial of relief on the merits. See *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc). The language in the trial court's order, however, made it apparent that the court was denying relief under Rule 6.508(D)(3), which precludes review of an issue raised in a post-conviction motion if that issue could have been raised on direct appeal unless the petitioner shows cause and prejudice or actual innocence. Enforcement of Michigan Court Rule 6.508(D)(3) constitutes "an independent and adequate state ground sufficient for procedural default." *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012).

Accordingly, because the last reasoned state court opinion was based on Petitioner's failure to comply with a state procedural rule, Petitioner's post-conviction claims are procedurally defaulted *Id.* Review of these claims is therefore barred unless Petitioner demonstrates cause and prejudice for the default, or if he demonstrates through an offer of new evidence that he is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In his eighth and tenth habeas claims, Petitioner argues that his appellate counsel was ineffective for failing to raise his post-conviction claims on direct appeal, and that this constitutes cause to excuse his procedural default. Appellate counsel, however, is not required "to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Where appellate counsel "presents one argument on appeal rather than another . . . the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present'" to establish ineffective assistance of counsel. *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

Appellate counsel was not ineffective during Petitioner's direct appeal for failing to raise Petitioner's post-conviction claims, and therefore Petitioner cannot demonstrate cause to excuse his procedural default. The claims raised on post-conviction review were not "clearly stronger" than the ones raised by appellate counsel on direct review.

1. Ineffective Assistance of Trial Counsel

Petitioner's fifth habeas claim asserts that his trial counsel rendered ineffective assistance of counsel for several reasons. He asserts his counsel: (1) failed to conduct a thorough investigation into the alibi defense, (2) failed to assert an alibi defense at trial, (3) failed to retain a firearm expert, (4) failed to request an alibi jury instruction, (5) failed to comply with the trial court's instructions to write down the things Petitioner wanted him to do, and (6) failed to move to suppress the victims' identification of Petitioner as one of the perpetrators.

The trial court, in the alternative to finding review of the claims barred, addressed these allegations in its opinion denying Petitioner's motion for relief from judgment. Regarding the failure to hire a firearm expert, the trial court stated:

> Defendant contends that his trial counsel was ineffective for failing to move for a defense firearms expert to refute Ashley Williams' testimony that Defendant was armed with a 9-millimeter semiautomatic handgun during the shooting. Defendant argues that his trial counsel should have called a firearms expert to show that he could not have been armed with a 9-millimeter semiautomatic because no 9-millimeter shell casings were recovered from the crime scene. However, trial counsel established this point during cross-examination of the prosecution's firearms expert, Michigan State Police Sergeant Greg (sic?) Rousseau. On cross examination, Sergeant Rousseau explained that all of the shell casings recovered from

the scene were fired from a .380 semiautomatic firearm, not a 9-millimeter. (Trial Transcript Vol III at 24). He further testified that he would expect to find spent 9-millimeter casings if a 9-millimeter semiautomatic weapon had been fired inside the dwelling, but not if a 9-millimeter revolver had been used. (Trial Transcript Vol III at 26-27). Thus, trial counsel effectively impeached Ashley Williams' testimony concerning the gun during his cross-examination of Sergeant Rousseau. Trial counsel also highlighted this discrepancy in Ashley Williams' testimony during his closing remarks. (Trial Transcript Vol IV at 24 & 26). Defendant has failed to explain what a firearms expert for the defense could have added on this issue. Moreover, the jury was free to (and apparently did) believe the rest of Ashley Williams' testimony even if she was mistaken about the type of gun that Defendant used. See CJI2d 3 .6.

Dkt. 18-13, at 4-5.

For the reasons stated by the trial court, Petitioner's appellate counsel was not ineffective for failing to raise this claim on direct appeal. The issue Petitioner claims he needed an expert witness for were adequately covered by defense counsel's cross examination of the prosecutor's expert. This claim was not clearly stronger than the ones raised by appellate counsel.

Next, with respect to the allegation that counsel failed to fully investigate and present an alibi defense, the trial court stated:

Two of Defendant's ineffective assistance of trial counsel claims counsel's failure to conduct a thorough investigation of Defendant's alibi and counsel's failure to put on an alibi defense-are barred by MCR 6.508(D)(2) because these claims were argued, and decided against Defendant, on direct appeal and Defendant has not established a retroactive change in the law

that has undermined the prior decision. See *Lister*, unpub op at 6-7.

Dkt. 18-13, at 3-4.

While appellate counsel did not raise a claim of ineffective assistance of counsel for failing to present a stronger alibi defense, Petitioner did so on his own in a supplemental pro se brief. As indicated above, the Michigan Court of Appeals found the claim to be without merit, and that decision was reasonable. Petitioner presented nothing additional on collateral review to the state courts, and he presents nothing here, to demonstrate that the claim as presented on collateral review merited relief. Petitioner proffers nothing other than the letter from the gas station to support his alibi defense. And the letter from the gas station in no way suggests that his counsel was ineffective for the manner in which he presented Petitioner's defense. By the time counsel was representing Petitioner, the video tape Petitioner claims would have benefitted the defense no longer existed. The claim as presented in Petitioner's motion for relief from judgment was not clearly stronger than the way it was presented on direct review.

Next, with respect to the failure to request an alibi jury instruction, the trial court stated:

Contrary to Defendant's argument, trial counsel did request an alibi instruction, and the Court read the following alibi instruction to the jury:

> You've heard evidence that the defendant could not have committed the alleged crimes because he was somewhere else when the crimes were committed. The prosecutor must prove beyond a reasonable doubt that the defendant was actually there when the alleged crimes were committed. The defendant does not
> have to prove he was somewhere else.
>
> If, after carefully considering all the evidence, you have a reasonable doubt about whether the defendant was actually present when the alleged crimes were committed, you must find him not guilty.

(Trial Transcript Vol IV at 62-63).

Dkt. 18-13, at 5.

For the reasons stated by the trial court, this claim of ineffective assistance of trial counsel was not clearly stronger than the claims raised by appellate counsel on direct review. The jury instructions adequately informed the jury to acquit Petitioner if it believed he was somewhere else at the time of the crime.

Finally, with respect to the failure to move to suppress the victims' identification testimony, the trial court stated:

> Defendant has not identified an act by the police that improperly suggested him as the perpetrator. To the contrary, the victims had

> a prior relationship with Defendant and they provided the police
> with a picture of Defendant identifying him as the perpetrator.
> Under the circumstances, there was no legal basis for trial
> counsel to file a motion to suppress the victims' identification
> testimony. Further, counsel cannot be deemed ineffective for
> failing to file a meritless motion.

Dkt. 18-14, at 2.

For the reasons stated by the trial court, this claim was baseless. The victims used Facebook to pull up a photograph of Petitioner for the police. One of the victims had a romantic relationship with him. There was no basis for moving to suppress their in-court identification. This claim is not clearly stronger than the ones raised on direct appeal.

Appellate counsel was not ineffective for failing to raise any of Petitioner's new claims of ineffective assistance of trial counsel on direct appeal.

## 2. Prosecutorial Misconduct

Petitioner asserts in his sixth habeas claim that the prosecutor committed misconduct by asserting without evidentiary support that Petitioner committed the crime with a 9 mm revolver. The trial court rejected this claim as baseless:

> Defendant maintains that the prosecutor presented false
> evidence and argument that Defendant used a 9-millimeter
> revolver during the shooting contrary to Ashley Williams'

testimony that he used a 9-millimeter semiautomatic. Ashley Williams described Defendant's gun as a 9-millimeter semiautomatic with a clip. However, Sergeant Rousseau testified that a semiautomatic would not have a separate clip with bullets in it. (Trial Transcript Vol III at 22). Also, the other victims, Catherine Williams and Chanquiece Moten, testified that Defendant's gun stopped firing at one point while he was pulling the trigger. (Trial Transcript Vol II at 86 & 191 ). Sergeant Rousseau explained that when someone tries to shoot a revolver that has run out of bullets, "[i]t will go 'click,' because it's on an empty cylinder." (Trial Transcript Vol III at 27). Sergeant Rousseau also testified that a 9-millimeter revolver, unlike a semiautomatic, retains its cartridges in the cylinder of the firearm. Thus, investigators would not usually find fired cartridges lying around the crime scene if the defendant used a 9-millimeter revolver. (Trial Transcript Vol III at 18). Based on this testimony, the Court finds that there was significant evidence in the record to support the prosecution's argument that Defendant used a 9-millimeter revolver during the incident notwithstanding Ashley Williams' contrary testimony. There was no prosecutorial misconduct.

Dkt. 18-13, at 6.

Prosecutors have "leeway to argue reasonable inferences from the evidence." *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). Given the conflicting evidence about whether Petitioner used a semi-automatic handgun or a revolver, the prosecutor was free to make the reasonable inference that Petitioner used a revolver. This claim is not clearly stronger than the ones raised by appellate counsel on direct review.

3. Withholding Witness List

Petitioner's seventh claim asserts that the prosecutor improperly withheld co-defendant's name from its initial witness list, depriving him of a full and fair opportunity to prepare for the case presented against him. Again, for the reasons stated by the trial court, this claim is not clearly stronger than the ones raised by appellate counsel on direct appeal:

> Next, Defendant argues that the prosecution violated MCL 767.40a, by adding his Co-Defendant to its amended witness list six days before trial. Pursuant to MCL 767.40a(3), "not less than 30 days before trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of witnesses the prosecution intends to produce at trial." However, in this case, the prosecution's late addition of the Co-Defendant to its witness list did not violate MCL 767.40a because that statute does not apply to witnesses that are accomplices. *People v. Sanders*, 28 Mich. App. 510; 184 N.W.2d 487 (1970). In addition, Defendant suffered no prejudice because his Co-Defendant was not an endorsed witness and was not called to testify during Defendant's trial.

Dkt. 18-13, at 6.

Appellate counsel was not ineffective for omitting this weak claim. Petitioner asserts that the prosecutor added his co-defendant to the witness list with the intent to have him testify that he committed the crime with Petitioner. But Petitioner's co-defendant did not testify at Petitioner's trial. Therefore, any impropriety in the late amendment to the witness list was harmless. Appellate counsel was not required to raise this claim on direct review.

4. Suppression of Exculpatory Evidence

Finally, Petitioner's ninth claim asserts that the prosecutor withheld exculpatory evidence from the defense. Petitioner asserts that the prosecutor did not timely turn over the recording of the 9-1-1 call, and it did not disclose that it would show one of the victims a picture of a 9 mm revolver. Petitioner asserts that in the recording one of the victims gave a description of the perpetrator that differed from what she testified to on cross examination, and he asserts that if he had advance notice that the photograph would be used, he would have shown the witness a photograph of a 9 mm semi-automatic to impeach her testimony.

The trial court rejected the claim as follows:

> Defendant has not shown that the prosecutor failed to disclose any material, exculpatory evidence. On the contrary, the allegedly exculpatory 911 recordings were played for the jury during the prosecutor's case in chief. (Trial Transcript Vol II at 30-31). Thus, the prosecution did not suppress the existence of this evidence. To the extent that Defendant argues that the prosecution did not disclose this evidence before trial, he still has not established a due process violation. Defendant has not shown that if the 911 recording had been disclosed earlier, a reasonable probability exists that he would have been acquitted. Accordingly, Defendant suffered no prejudice as a result of the prosecution's alleged failure to provide this evidence prior to trial.

Dkt. 18-13, at 7.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. See *Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Here, the 9-1-1 tape may have been exculpatory in that the victim gave a description of the suspect that was contrary to description she gave at trial on cross examination. As to the photo of the revolver, other than indicating Petitioner may have shown a photo of a semi-automatic at trial to rebut the photo of the revolver, he has not shown how a photo of a revolver is exculpatory. In any event, although defense counsel objected to the presentation of these pieces of evidence at trial, see Dkt. 18-7, at 20-29, Dkt. 18-8, 22, there is no indication in the record that he was surprised by the evidence. Defense counsel was able to examine the witnesses regarding the tape and the photograph of the gun. Both the 9-1-1 tape and the photo of the revolver were not suppressed by the prosecution since they were presented at trial. Petitioner fails to show how he was prejudiced by the alleged late

disclosure of the evidence. This claim is not clearly stronger than the ones raised by appellate counsel on direct appeal.

Accordingly, Petitioner's state post-conviction review claims are barred from review by Petitioner's state court procedural default of failing to raise them on direct review, and Petitioner has failed to demonstrate cause to excuse the default because his appellate counsel was not ineffective for failing to raise them on direct appeal. Finally, Petitioner has not attempted to raise a claim of actual innocence based on newly discovered evidence to excuse his default. See *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

As all of Petitioner's claim are without merit or barred from review, the petition will be denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability issued. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of*

*Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner's claims are devoid of merit or barred by his state court procedural default. Accordingly, a certificate of appealability is denied.

The Court will also deny permission to appeal in forma pauperis because an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Denise Page Hood
Honorable Denise Page Hood
Chief United States District Judge

Dated: July 31, 2018